UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| Jeanine Porogi, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 3:20-cv-00513 JD-MGG |
| | ) |
| Ethicon, Inc. et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**OPINION AND ORDER**

Plaintiffs Jeanine and John Porogi initiated this litigation on November 19, 2014 by filing a short form complaint as part of *In re Ethicon, Inc. Pelvic Repair System Products Liability Litigation*, MDL No. 2327, No. 2:12-MD-02327, a multidistrict litigation pending in the United States District Court for the Southern District of West Virginia (the "MDL"). The MDL involves allegedly defective women's pelvic mesh products manufactured by Defendant Ethicon, Inc., a wholly owned subsidiary of Defendant Johnson & Johnson (collectively "Ethicon"). On June 19, 2020, this case was transferred from the MDL to this Court and the parties' status report indicates that while they continue informal settlement discussions, they would like to set a trial date in August 2021. [DE 51; DE 59 at 2-3]. Ethicon filed a Motion for Partial Summary Judgment on October 18, 2018, seeking dismissal with prejudice of several of the Plaintiffs' claims. As set forth below, Ethicon's Motion for Partial Summary Judgment is granted in part and denied in part. [DE 26].

## I.  Factual Background

In 2008, Ms. Porogi was diagnosed with pelvic organ prolapse. [DE 28 at 1]. On August 14, 2008, she underwent a surgical procedure completed by Dr. Mark Lewis and Dr. Carl Walker at Memorial Hospital in South Bend whereby an Ethicon Gynecare Prolift mesh ("Prolift mesh") was implanted by Dr. Lewis and a TVT-Secur sling ("TVT") was implanted by Dr. Walker. [DE 1 at 3; DE 28 at 2]. Following the implantation of the mesh and TVT, Ms. Porogi suffered from intermittent pain, discomfort, and infections in addition to dyspareunia, which is experiencing pain while participating in sexual intercourse or sexual activity. [DE 28-1 at 7].[1] Based on her experience following the implantation of the mesh and TVT, Ms. Porogi now claims to have suffered bodily injuries as a result of Ethicon's products. [DE 28-1 at 7].

Ms. Porogi testified that while she was able to continue daily living following the implantation, she never completely healed and continued to struggle with vaginal infections and dyspareunia. [DE 28-1 at 13]. She also testified in her deposition that she would experience pain "all of the time" which she attributed to the exposed Prolift mesh. [DE 28-9 at 30]. Ms. Porogi sought additional help from healthcare providers when she began to experience sharp pains in August of 2013. [DE 28-1 at 7]. She continues to experience spastic muscles in the pelvic area and continued painful intercourse. *Id.* at 8. On June 25, 2014, Dr. Lisa Johnson at Northwestern Memorial Hospital in Chicago removed some of the exposed mesh product and Ms. Porogi underwent pelvic floor therapy sessions. *Id.* at 9. Even after removing 60% of the exposed mesh, her pain returned varying between a sharp pain and dull ache, which prevents her from having sexual intercourse. [DE 28-7 at 92-93]. In 2017, Dr. Zhiquan Zhao identified more exposed mesh upon examination. [DE 28 at 2]. On May 16, 2018, Dr. Gregory Bales at the University of Chicago

---

[1] The page number references are from the transcript of Ms. Porogi's deposition and are not referenced from the pdf page number.

performed an explantation of the exposed mesh and advised Ms. Porogi that she may have a reoccurrence of mesh exposure. [DE 28 at 3].

Ms. Porogi stated in her amended fact sheet that she was warned prior to her surgery that there were risks associated with the surgery, most notably possible incontinence and sexual intercourse being uncomfortable immediately following surgery but that it would improve with time. [DE 28-1 at 5-6]. She went on to state that "[t]here was no mention of erosion or the possible need to later remove the mesh." *Id*. at 6. Ultimately, Ms. Porogi had to have several portions of the pelvic mesh product removed due to pain, discomfort, and mesh exposure. *Id*. at 7. In his affidavit, Dr. Lewis, the implanting physician, testified that he was not told by Ethicon that they were concerned about erosion or contraction associated with implanting the Prolift mesh, or that Ethicon needed to develop a safer mesh because of problems encountered with contraction and erosion. [DE 28-10]. In addition, case specific expert Daniel S. Elliott, M.D. opined that Ms. Porogi has severe pelvic pain consistent with pelvic floor myalgia and severe vaginal pain resulting in severe dyspareunia with extensive banding of the mesh. [DE 28-7 at 93]. As a result, Dr. Elliott stated that Ms. Porogi's prognosis is poor for pelvic pain, pelvic floor myalgia, and dyspareunia noting the unlikelihood of her benefiting from physical intimacy again in her life. *Id*. at 94.

Ms. Porogi filed this lawsuit on November 19, 2014. She asserted the following claims in her short form complaint:

Count I – Negligence;

Count II – Strict Liability – Manufacturing Defect;

Count III – Strict Liability – Failure to Warn;

Count IV – Strict Liability – Defective Product;

Count V – Strict Liability – Design Defect;

      Count VI – Common Law Fraud;

      Count VIII – Constructive Fraud;

      Count IX – Negligent Misrepresentation;

      Count X – Negligent Infliction of Emotional Distress;

      Count XI – Breach of Express Warranty;

      Count XII – Breach of Implied Warranty;

      Count XIV – Gross Negligence;

      Count XV – Unjust Enrichment;

      Count XVI – Loss of Consortium;

      Count XVII – Punitive Damages;

      Count XVIII – Discovery Rule and Tolling;

[DE 1 at 4-5]. Ethicon moved for Partial Summary Judgment and dismissal with prejudice of all of Ms. Porogi's claims except for Loss of Consortium (Count XVI), Punitive Damages (Count XVII), and Discovery Rule and Tolling (Count XVIII).

## II.    Standard of Review

A court must grant summary judgment if the movant shows that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one identified by the substantive law as affecting the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" exists with respect to any material fact when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. Where a factual record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial, and summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

574, 587 (1986). In determining whether a genuine issue of material fact exists, courts must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in that party's favor. *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008); *King v. Preferred Tech. Grp.*, 166 F.3d 887, 890 (7th Cir. 1999). The non-moving party cannot simply rest on its pleadings but must present evidence sufficient to show the existence of each element of its case on which it will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

### III. Discussion

#### A. Choice of Law

Before considering the merits of the parties' arguments, the Court must briefly address the choice of law issue. When a plaintiff files her claim directly into the MDL, as Ms. Porogi did in this case, the choice-of-law rules of the state where the plaintiff was implanted with the product applies. *See Ridgley v. Ethicon, Inc*., 2017 WL 525854, at *2 (S.D.W. Va. Feb. 8, 2017). Since the products were implanted into Ms. Porogi's body in Indiana, Indiana substantive law applies to her claims. "Indiana applies a modified *lex loci delecti* test: the substantive law of the place where the tort occurs controls the case unless the location of the tort is an insignificant contact." *Id*. (citing *Simon v. United States*, 805 N.E.2d 798, 805 (Ind. 2004)). Moreover, both parties agree that Indiana law applies in this case, therefore, this Court will apply Indiana law in this suit.

#### B. Counts to Be Dismissed

To simplify the analysis, the Court first addresses the counts that will be dismissed. In their response brief, the Porogis agree to dismiss Count II (Strict Liability – Manufacture Defect), Count XI (Breach of Express Warranty), and Count XII (Breach of Implied Warranty, but only to the extent it sounds in contract). Pursuant to these concessions, this Court **GRANTS** Ethicon's Motion

for Partial Summary Judgment as to Count II, XI, and XII (to the extent it sounds in contract), all of which are **DISMISSED WITH PREJUDICE**.

### C.  Counts to Be Merged

Ethicon next argues that the Porogis' claims set forth in Count I (Negligence), Count III (Strict Liability – Failure to Warn), Count IV (Strict Liability – Defective Product), Count V (Liability – Design Defect), Count VI (Common Law Fraud), Count VIII (Constructive Fraud), Count IX (Negligent Misrepresentation), Count X (Negligent Infliction of Emotional Distress), Count XII (Breach of Implied Warranty), and Count XIV (Gross Negligence) should be subsumed by the Indiana Product Liability Act (IPLA) into a single cause of action, and therefore should be extinguished as stand-alone torts. The plaintiffs disagree as to Count IX (Negligent Misrepresentation) and therefore the Court will address that Count in a separate section.

The IPLA "codified the entire field of products liability" law in Indiana. *Weigle v. SPX Corp.*, 729 F.3d 724, 737 (7th Cir. 2013). The IPLA "governs all actions that are: (1) brought by a user or consumer; (2) against a manufacturer or seller; and (3) for physical harm caused by a product; regardless of the substantive legal theory or theories upon which the action is brought." Ind. Code § 34-20-1-1. The Indiana Supreme Court has stated that it is "clear the legislature intended that the [IPLA] govern all product liability actions, whether the theory of liability is negligence or strict liability in tort." *Dague v. Piper Aircraft Corp.*, 418 N.E.2d 207, 212 (Ind. 1981). Historically, some district courts in Indiana have merged any tort claims that fell under the IPLA, while other courts dismissed the tort claims and allowed the plaintiff to replead a single IPLA count that includes various theories of recovery. *See Wortman v. C.R. Bard, Inc.*, 2019 WL 6329651, at *6 (S.D. Ind. Nov. 26, 2019). More recently, this Court held that merging the claims was unnecessary because "[w]hether the theories are designated as Counts 1 through 6, or Count

6

1(a) through 1(f), both parties understand that [the plaintiff] is pursuing a single cause of action under the IPLA" and "if anything, breaking the different theories into separate counts made the complaint easier to understand." *Fisk v. Medtronic, Inc.*, 2017 WL 4247983, *4 (N.D. Ind. Sept. 25, 2017). While recognizing that taking the step of merging the claims is unnecessary, since the parties both agree here that most of the claims asserted against Ethicon fall under the IPLA, the Court thus **INCORPORATES** the following claims to form one product liability claim under the IPLA: Count I, III, IV, V, VI, VIII, X, XII (to the extent it sounds in tort), and XIV.[2]

### D. Merged IPLA Claim

The Court now turns to the merged IPLA claim. Under the IPLA, a plaintiff must show a product is defective and unreasonably dangerous through one of three theories: design defect, manufacturing defect, or failure to warn. *Campbell Hausfeld/Scott Fetzer Co. v. Johnson,* 109 N.E.3d 953, 956 (Ind. 2018), *First Nat'l. Bank & Trust Corp. v. Am. Eurocopter Corp.*, 378 F.3d 682, 689 (7th Cir. 2004) (applying Indiana law). "A plaintiff bringing an action under the Act must establish that (1) he or she was harmed by a product; (2) the product was sold 'in a defective condition unreasonably dangerous to any user or consumer'; (3) the plaintiff was a foreseeable user or consumer; (4) the defendant was in the business of selling the product; and (5) the product reached the consumer or user in the condition it was sold." *Bourne v. Marty Gilman, Inc.*, 452 F.3d 632, 635 (7th Cir. 2006) (quoting Ind. Code § 34–20–2–1). As discussed above, the Porogis agreed to drop Count II (Strict Liability – Manufacturing Defect), therefore, for summary judgment purposes, the Court no longer needs to analyze the IPLA claim based on a manufacturing defect theory. [DE 28 at 4]. Instead, the Court will proceed based on the two remaining theories under

---

[2] Ethicon originally moved the Court to subsume Count I, II, III, IV, V, VI, VIII, IX, X, XI, XII, and XIV into a single IPLA cause of action. However, as the Court decided *supra* in Section III (B), the Court dismisses Count II, XI, and XII (to the extent it sounds in contract). Thus, the Court is not incorporating Count II, XI, and XII (to the extent it sounds in contract) into the IPLA claim, all of which are moot at this phase.

the IPLA: failure to warn and design defect.

### 1. Failure to Warn

For failure to warn claims, "the party making the claim must establish that the manufacturer or seller failed to exercise reasonable care under the circumstances in designing the product or in providing the warnings or instructions." Ind. Code § 34-20-2-2. But "[u]nder Indiana's learned-intermediary doctrine, a medical-device manufacturer can discharge this duty by providing adequate warnings to physicians." *Kaiser v. Johnson & Johnson*, 947 F.3d 996, 1015 (7th Cir. 2020). Manufacturers, such as Ethicon, have a duty only to warn the physicians, rather than the patients, of the risks associated with the use of their medical product. *See In re Zimmer, NexGen Knee Implant Prods. Liab. Litig.*, 884 F.3d 746, 751 (7th Cir. 2018); *Phelps v. Sherwood Med. Indus.*, 836 F.2d 296, 303 (7th Cir. 1987). Under this doctrine, the plaintiff "must not only show that a manufacturer's warning was inadequate, but that such inadequacy affected the prescribing physician's use of the product and thereby injured the plaintiff." *Minisan v. Danek Med. Inc.*, 79 F. Supp. 2d 970, 978–79 (N.D. Ind. 1999). Therefore, the ultimate inquiry is whether the Porogis can show that supplemental warnings would have caused her physician to take a different course of action. *See Kaiser,* 947 F.3d at 1016 ("The causation question here is relatively straightforward: Would [the implanting doctor] have used the Prolift device to treat [plaintiff's] condition if Ethicon had provided additional warnings?").

Ethicon argues that summary judgment is appropriate if no alleged deficiencies in their warnings could have affected the implanting physicians' recommendations. [DE 26 at 11]. And that since the Porogis have not deposed the implanting surgeons in this case, they cannot meet their burden to show that a different warning would have altered the physicians' decision to implant the Prolift and TVT-S. *Id.* at 12. In response, the Porogis first point to the affidavit of Dr.

Mark Lewis, a practicing gynecologist, and one of the doctors who implanted Ethicon's Prolift mesh product into Ms. Porogi's body. Dr. Lewis's affidavit states the following (summarized):

- Ethicon did not tell him that the French doctors who helped develop the Prolift procedure had told Ethicon as early as 2003 about their concerns over erosion and contraction associated with implanting the mesh.
- Ethicon did not tell him that in April 2006 the French doctors advised Ethicon of the need to develop a safer mesh because of problems encountered with contraction and erosion.
- "I would have wanted to know about that information and I would of [sic] wanted to share it with Jeanine with respect to her decision to go forward with the Prolift procedure."
- I began implanting the Prolift in my patients in 2007 and stopped approximately in 2010.

[DE 28-10]. This tends to demonstrate that Dr. Lewis was not independently aware of the risks associated with the Prolift system and, that had he known about them, he would have shared them with Ms. Porogi to better inform her decision to use the products. In order to succeed on a failure to warn claim, a plaintiff must *prove* that stronger warnings would have caused the physician to take a different course. *Kaiser*, 947 F.3d at 1016 (emphasis added). Here, the Porogis do not need to prove this claim at this stage in the litigation—they need only demonstrate that there is a genuine issue of material fact—whether additional warnings from Ethicon would have caused Dr. Lewis to take a different course of action. The Court finds that the Porogis have adequately supported their failure to warn claim at this stage in the litigation. Rule 56(c) expressly allows for parties to support their assertions with affidavits and does not specifically require depositions. Fed. R. Civ. 56(c)(1)(A). While a deposition would certainly elucidate Dr. Lewis' position on what he would have done with the additional information from Ethicon, viewing the record in the light most favorable to the Porogis, the Court finds Dr. Lewis' affidavit to be sufficient at this stage.

In addition to Dr. Lewis' affidavit, the Porogis also supplied the expert report prepared by

Dr. Daniel Elliott, a specialist in treating pelvic organ prolapse and urinary incontinence, who reviewed Ms. Porogi's case specifically. [DE 28-2]. Relevant to the failure to warn inquiry, Dr. Elliott stated in his expert report:

> Ms. Porogi did not receive information about the above risks because Ethicon did not disclose them fully in its IFU and surgeons, including the implanting surgeon in Ms. Porogi's case, were not made aware of them. This is true despite information readily available to Ethicon about these risks, which predate the launch of the devices. Because of this, Ms. Porogi's implanting surgeon could not pass this information on to her and properly consent her about the risks associated with the Ethicon devices. Ms. Porogi was unable to make a fully informed decision about having the Ethicon devices implanted. As a result, to a reasonable degree of medical certainty, Ms. Porogi suffered injuries that were not disclosed to her by Ethicon and the inadequate disclosures of these risks by Ethicon were a substantial factor and/or cause of Ms. Porogi's injuries.

[DE 26-6 at 60]. Later in the report, Dr. Elliott concluded that "Ms. Porogi was not able to make a fully informed medical decision regarding the implantation of Prolift and TVT-Secur mesh because Ethicon failed to fully disclose the risks, complications (both early and late) in the Instructions for Use." [DE 26-7 at 94]. He went on to say that her "implanting surgeon was not able to provide the necessary and required information to Ms. Porogi for an informed consent because Ethicon failed to fully reveal such information and failed to fully evaluate said information prior to launch." *Id*. Dr. Elliott concluded by stating that as a result of developing complications from the Prolift device, Ms. Porogi suffered damages and the complications have had a significant impact on her quality of life. *Id*. at 95. This tends to show that Ethicon was aware of a number of risks associated with their products and did not warn the physicians who were using them.

In a footnote in its reply brief, Ethicon argues that the physician, Dr. Carl Walker, who implanted the TVT-Secur (but not the Prolift mesh) did not provide an affidavit or any evidence that would support Ms. Porogi's failure to warn claim. [DE 30 at 4 n.3]. Ms. Porogi's short form complaint indicates that she is asserting her claims based on two Ethicon products—the Prolift

mesh and the TVT-Secur. [DE 1 at 3-4]. The products appear to be utilized for two different purposes: the Prolift mesh is used to help address pelvic organ prolapse [DE 26-3 at 11] and the TVT-Secur is used to help address stress urinary incontinence [DE 26-4 at 30]. On August 14, 2008, Dr. Walker implanted a TVT-Secur while Dr. Lewis implanted a Total Prolift into Ms. Porogi's body. [DE 26-7 at 90]. In her deposition, Ms. Porogi indicates that at the time of her surgery, she did not understand that there were two separate products implanted, but now recognizes that the Prolift mesh is currently being exposed but the TVT-Secur is doing okay. [DE 28-9 at 24-25]. In response to Ethicon's motion for summary judgment, the Porogis provided an affidavit from Dr. Lewis, but as Ethicon notes, failed to provide one from Dr. Walker. "If the moving party has properly supported his motion, the burden shifts to the non-moving party to come forward with specific facts showing that there is a genuine issue for trial." *Spierer v. Rossman*, 798 F.3d 502, 507 (7th Cir. 2015). Since the failure to warn claim requires the Porogis to not only show that Ethicon's warnings were inadequate but also that their inadequacy affected the physician's use of the product, this Court finds that the Porogis have failed to demonstrate this for Dr. Walker's use of the TVT-Secur. Without any evidence from the implanting physician, the Court is unable to determine whether the additional warnings from Ethicon would have affected his use of the TVT-Secur product.

Therefore, the Court **GRANTS** Ethicon's motion for summary judgment on the theory of failure to warn under the IPLA as to the implantation of the TVT-Secur but **DENIES** the motion on the theory of failure to warn under the IPLA as to the implantation of the Prolift mesh system.

### 2. *Design Defect*

In their short-form complaint, the Porogis also allege design defect based on strict liability. However, Indiana law does not recognize strict liability design defect claims. Instead, a design

11

defect claim under the IPLA sounds in negligence. *See* Ind. Code § 34-20-2-2. The Indiana Supreme Court has stated that "[f]or actions based on an alleged product design defect, however, the Act departs from strict liability and specifies a different standard of proof: '[T]he party making the claim must establish that the manufacturer or seller failed to exercise reasonable care under the circumstances in designing the product.'" *TRW Vehicle Safety Systems, Inc. v. Moore*, 936 N.E.2d 201 (Ind. 2010) (quoting Ind. Code § 34–20–2–2).

The parties agreed that most of the Porogis' claims are subsumed by the IPLA. Moreover, Ethicon recognized that the IPLA includes three theories: design defect, manufacturing defect, and failure to warn. The Court has already addressed the manufacturing defect and failure to warn theories, but as for design defect, the Court finds that Ethicon did not adequately move for summary judgment on that theory. Ethicon states in its memorandum supporting its motion for summary judgment, "the Court should grant summary judgment to Defendants on Plaintiffs' IPLA claim to the extent it is based on manufacturing defect and failure to warn." [DE 27 at 3]. Ethicon then further explains why the plaintiffs' claims fail under these two theories under the IPLA but does not address why their claims fail under the design defect theory. *Id.* at 9-12. The most Ethicon does to address the design defect claim is state that it should fail as a stand-alone tort because Indiana applies a negligence standard, not strict liability. But this is an insufficient response because technically the Porogis initially pled each theory of manufacturing defect, failure to warn, and design defect under strict liability and not under the IPLA.

The Court notes that the party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material

12

fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Ethicon has failed to adequately move for summary judgment on the design defect claim. Moreover, the Porogis' case expert, Dr. Elliott provided some information regarding the defective design of the Prolift mesh utilized in the procedure, which indicates there to be a genuine issue of material fact that exists for the jury to decide. [DE 26-5 at 58-60]. Dr. Elliott specifically stated that Ethicon knew that the "Prolift's pelvic mesh products . . . are defective due to Ethicon's failure [to] adequately test the product prior to launch" and due to the "products' frequent tendencies to degrade, fragment, and elongate." *Id*. at 58. Dr. Elliott also concluded that treatment of pelvic organ prolapse and stress urinary incontinence with the Ethicon products was no more effective than feasible alternatives, that the products exposed patients to greater risk than feasible alternatives, and that the products made future surgical repair more difficult than feasible alternatives. *Id*. at 59.

Therefore, the Court **DENIES** Ethicon's Motion for Summary Judgment on the theory of design defect under the IPLA and allows it to proceed.

### E. Count IX: Negligent Misrepresentation

The Porogis also argue that their negligent misrepresentation claim should advance because it is a viable claim under Indiana law as it arises out of a business transaction—the purchase of defective and misrepresented Prolift and TVT-Secur products. [DE 28 at 4]. Indiana's definition of negligent misrepresentation was adopted from the Restatement (Second) of Torts § 552(1), which provides that:

> "One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information."

13

*U.S. Bank N.A. v. Integrity Lane Title Corp.,* 929 N.E.2d 742, 747 (Ind. 2010). Therefore, to state a claim for negligent misrepresentation, the Porogis must demonstrate that Ethicon supplied "false information for the guidance of others in their business transactions; that others justifiably relied upon the information to their pecuniary loss; and that [Ethicon] failed to exercise reasonable care or competence in obtaining or communicating information." *Jasper v. Abbott Labs., Inc.*, 834 F. Supp. 2d 766, 772 (N.D. Ill. 2011) (quotation omitted). Historically, Indiana Courts declined to recognize the tort outside the employment context. But, "[t]hen, in 2010, the Indiana Supreme Court carved out another exception—it allowed a claim of negligent misrepresentation by a lender who relied upon a title search by a title insurance company." *Samaron Corp. v. United of Omaha Life Ins. Co.*, 2014 WL 4906314, at *12 (N.D. Ind. Sept. 29, 2014) (citing *Integrity,* 929 N.E.2d at 749).

Ethicon argues that the Porogis' claim for negligent misrepresentation fails because Indiana does not recognize the theory of negligent misrepresentation in personal injury cases. [DE 27 at 3]. Ethicon points to case law indicating that claims for negligent misrepresentation is limited to business transactions. "Indiana law has recognized a claim for negligent misrepresentations only in limited contexts, and this claim requires a plaintiff to establish, among other elements, that the defendant 'supplie[d] false information for the guidance of others in their business transactions.'" *Fisk v. Medtronic, Inc.*, 2017 WL 4247983, at *8 (N.D. Ind. Sept. 25, 2017) (quoting *Eby v. York-Div., Borg-Warner*, 455 N.E.2d 623, 628–29 (Ind. Ct. App. 1983)); *see also McCalment v. Eli Lilly & Co.*, 860 N.E.2d 884, 896 (Ind. Ct. App. 2007). Ethicon also points to the holding in *Lautzenhiser v. Coloplast A/S*, 2012 WL 4530804, at *6 (S.D. Ind. Sept. 29, 2012) which declined to recognize a negligent misrepresentation claim in a similar products liability case first because "no Indiana case has extended negligent misrepresentation to cover

14

concealment or omission" and second because "[a]ny alleged misrepresentations by [the defendant's employee] were in regard to the safety or efficacy of a potential medical procedure, not a business transaction." Ultimately, the court in *Lautzenhiser* dismissed the negligent misrepresentation claim from the product liability case because it found that there was no business transaction. *Id*.

In response, the plaintiffs argue that Ms. Porogi purchased, as part of her treatment, two products manufactured by Ethicon and without that business transaction, there would be no claim to assert against Ethicon. The Porogis first cite to the 2010 case where the Indiana Supreme Court carved out the additional exception for the tort and allowed a claim of negligent misrepresentation to proceed against a title insurance company. *U.S. Bank N.A. v. Integrity Lane Title Corp.,* 929 N.E.2d 742 (Ind. 2010). They argue that Ethicon provided false information on the safety and effectiveness of their products, which would have been important for Ms. Porogi to know. They then point to a recent district court holding which found that the Indiana Supreme Court "has indicated that application of a negligent misrepresentation claim *can* extend beyond employment relationships" and, potentially as the Porogis argue, to the facts and circumstances of this case. *In re Rust-Oleum Restore Mktg., Sales Practices & Prod. Liab. Litig.*, 155 F. Supp. 3d 772, 823 (N.D. Ill. 2016) (emphasis added). The Plaintiffs failed to provide any other cases where Indiana courts have recognized a claim for negligent misrepresentation in a product liability suit.

Thus, similar to the holding in *Samaron Corp..*, 2014 WL 4906314, at *13 (N.D. Ind. Sept. 29, 2014), this Court recognizes that allowing Ms. Porogi's claim for negligent misrepresentation to proceed here would likely represent an expansion of the tort as is currently recognized by Indiana courts. And "[i]t is not this Court's role to expand upon the availability of

15

tort remedies that Indiana has made clear are to be very limited in scope." *Id*.; *see also Binns v. Ocwen Loan Servicing, LLC*, 2015 WL 5775827, at *18 (S.D. Ind. Apr. 1, 2015). While the Porogis may have technically purchased the products from Ethicon, the intermediary selection of the product by the physicians and the lack of a direct transaction between the Porogis and Ethicon make it difficult to determine whether in fact this was a business transaction. "Not only was Ms. [Porogi] not entering a business transaction in connection with this alleged misrepresentation—she was undergoing a surgery—she was not even acquiring a product at the time—she was having the device *[implanted]*." *Fisk*, 2017 WL 4247983 at *8. Without more direction from Indiana courts in the area of negligent misrepresentation and medical product liability, this Court declines to expand the application of the tort to the facts of this case.[3]

Therefore, the Court **GRANTS** Ethicon's Motion for Summary Judgment as to Count IX (Negligent Misrepresentation).

### F. Count XV: Unjust Enrichment

Finally, Ethicon argues that the Porogis' claim for unjust enrichment fails because it is an equitable remedy and not a vehicle for receiving compensatory damages. In response, the Porogis argue that their Unjust Enrichment claim should continue as it would include recovery for restitution. "To recover under an unjust enrichment claim, a plaintiff must generally show that he rendered a benefit to the defendant at the defendant's express or implied request, that the plaintiff expected payment from the defendant, and that allowing the defendant to retain the benefit without restitution would be unjust." *Reed v. Reid*, 980 N.E.2d 277, 296 (Ind. 2012); *see also Woodruff,*

---

[3] While the Court was not asked to certify the question to the Indiana Supreme Court, it declines to do so regardless. This case does not concern a matter of vital public concern, this claim is not outcome determinative to the case as it overlaps considerably with the claims asserted under the IPLA, and the Court sees no obstacle to future state court resolution of the issue. *See Rain v. Rolls-Royce Corp.*, 626 F.3d 372, 378 (7th Cir. 2010). Even where, as here, "there is no clear guidance from a state court, ... certification is neither mandated nor always necessary." *Id.* (quoting *State Farm Mut. Auto. Ins. Co. v. Pate,* 275 F.3d 666, 672 (7th Cir. 2001)).

*Tr. v. Ind. Family & Soc. Serv. Admin.,* 964 N.E.2d 784, 791 (Ind. 2012). More specifically, "Indiana courts articulate three elements for this claim: (1) a benefit conferred upon another at the express or implied consent of such other party; (2) allowing the other party to retain the benefit without restitution would be unjust; and (3) the plaintiff expected payment." *Good v. Indiana Teachers Ret. Fund*, 31 N.E.3d 978, 982 (Ind. Ct. App. 2015).

Relying on *Lautzenhiser v. Coloplast A/S*, 2012 WL 4530804, at *8 (S.D. Ind. Sept. 29, 2012), Ethicon argues that "[a]n unjust enrichment claim seeking damages for personal injuries, healthcare costs, and lost wages therefore warrants dismissal. To the extent that Plaintiffs seek such damages through their unjust enrichment claim, Ethicon is entitled to summary judgment on that claim." [DE 27 at 14]. Notably, the Porogis are seeking restitution here and not compensatory damages under this claim, nevertheless, Ethicon misconstrues the holding in *Lautzenhiser.* The Court denied the plaintiff's unjust enrichment claim not because the plaintiff "allege[d] personal injuries, health expenses, and lost wages," but because the plaintiff *only* "allege[d] personal injuries, health expenses, and lost wages" (emphasis added). That is, the plaintiff in *Lautzenhiser* failed to plea an equitable remedy, which the court noted would be restitution.

Here, while the Porogis *are* asserting a claim for restitution, they fail to argue or demonstrate any evidence that meets the required elements of unjust enrichment. "Even if there is no express contract, a plaintiff may sometimes recover under the theory of unjust enrichment, which is also called *quantum meruit*, contract implied-in-law, constructive contract, or quasi-contract. *Kelly v. Levandoski*, 825 N.E.2d 850, 860 (Ind. Ct. App. 2005) (citing *Bayh v. Sonnenburg,* 573 N.E.2d 398, 408 (Ind.1991)). The Porogis have not alleged any kind of contract despite asserting their right to restitution. Neither the Porogis' complaint, nor their memorandum in response to the motion for summary judgment asserts that they had any form of contractual

relationship or exchange with Ethicon. Nor have they attempted to demonstrate facts that could fit within the theory of unjust enrichment. The three required elements for an unjust enrichment claim are: "(1) a benefit conferred upon another at the express or implied request of this other party; (2) allowing the other party to retain the benefit without restitution would be unjust; and (3) the plaintiff expected payment." *Woodruff v. Ind. Family & Soc. Servs. Admin.*, 964 N.E.2d 784, 791 (Ind. 2012). The Porogis clearly expected a usable working product from Ethicon and paid for that product, but the Porogis have not alleged that Ethicon either expressly or impliedly requested the purchase of their product. Nor have they argued that they expected any kind of payment after the exchange. The Pororgis certainly expected a working product, but likely did not expect any payment following the implantation of the products.

Here, the Porogis seek equitable relief in the form of damages for restitution but have failed to support their claim for unjust enrichment with any facts to support their legal theory. Therefore, the Court **GRANTS** Ethicon's Motion for Summary Judgment as to Count XV (Unjust Enrichment).

### G.  Remaining Counts

What remain unaddressed by both parties are Count XVI (Loss of Consortium), XVII (Punitive Damages), and XVIII (Discovery Rule and Tolling). Because Ethicon did not address those claims in its motion, the Court allows those counts to proceed.

### V.  Conclusion

Based on the foregoing, Ethicon's Motion for Partial Summary Judgment is **GRANTED IN PART AND DENIED IN PART.**

1. The Court **GRANTS** Ethicon's motion for summary judgment on Count II (Strict Liability - Manufacturing Defect), Count XI (Breach of Express Warranty), and Count XII (Breach of Implied Warranty) to the extent it sounds in contract. These counts are **DISMISSED WITH PREJUDICE**.

2. The Cottons' Count I (Negligence), Count IV (Strict Liability – Defective Product), Count VI (Common Law Fraud), Count VIII (Constructive Fraud), Count X (Negligent Infliction of Emotional Distress), Count XII (Breach of Implied Warranty) but only to the extent it sounds in tort, Count XIV (Gross Negligence) are **INCORPORATED** into one IPLA claim and therefore **DENIED AS MOOT** as to those claims.

3. The Court **DENIES** Ethicon's Motion for Partial Summary Judgment on Count III (Strict Liability – Failure to Warn) as to the Prolift mesh but GRANTS the Motion as to the TVT-Secur. This count proceeds based on the failure to warn theory under the IPLA only for the Prolift mesh.

4. The Court **DENIES** Ethicon's Motion for Partial Summary Judgment on Count V (Strict Liability – Design Defect). This count proceeds based on the design defect theory under the IPLA for both the Prolift mesh and the TVT-Secur.

5. The Court **GRANTS** Defendants' Motion for Partial Summary Judgment on Count IX (Negligent Misrepresentation). This count is **DISMISSED WITH PREJUDICE**.

6. The Court **GRANTS** Defendants' Motion for Partial Summary Judgment on Count XV (Unjust Enrichment). This count is **DISMISSED WITH PREJUDICE**.

7. Plaintiff's Count XVI (Loss of Consortium), Count XVII (Punitive Damages), Count XVIII (Discovery and Tolling) will proceed, as these Counts are not addressed in this order.

SO ORDERED.

ENTERED: August 12, 2020

                                              /s/ JON E. DEGUILIO
                                        Chief Judge
                                        United States District Court